1

2

3

4

5

6

7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    DWAYNE EICHLER,                          No. CIV S-06-2894-JAM-CMK-P

12                    Plaintiff,

13           vs.                               <u>FINDINGS AND RECOMMENDATIONS</u>

14    G. STURGES[1], et al.,

15                    Defendants.

16    _____/

17           Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18    to 42 U.S.C. § 1983.  Pending before the court is defendants' motion for summary judgment

19    (Doc. 133).[2]

20    / / /

21    / / /

22    _____

23           [1]      Tilton, who was the lead defendant, has been dismissed.  Sturges is now the lead
      defendant.
24
             [2]      Also before the court are: (1) plaintiff's cross-motion for summary judgment
25    (Doc. 138); (2) plaintiff's motion for injunctive relief (Doc. 139); (3) plaintiff's motion for a
      court appointed expert witness (Doc. 140); and (4) plaintiff's motion for an extension of time to
26    file his pre-trial statement (Doc. 145).  Other pending motions are addressed by separate orders.

                                                  1

# I. BACKGROUND

This action proceeds on plaintiff's amended complaint filed on September 25, 2007.  Plaintiff claims deliberate indifference to his serious dental needs, in violation of the Eighth Amendment.  Defendants' evidence in support of summary judgment consists of their declarations and excerpts from plaintiff's medical records attached thereto as exhibits.  According to defendants, the undisputed facts show as follows:

Defendant Duckett

1. Defendant Duckett, a prison dentist, conducted a routine examination of plaintiff's teeth on December 7, 2000, consisting of cleaning, scaling, and root plaining.

2. During this examination, Dr. Duckett did not detect any cavities.

3. The examination revealed that plaintiff displayed good oral hygiene.

Defendant Stogsdill

4. Defendant Stogsdill, a prison dentist, examined plaintiff's teeth on July 17, 2001, on an emergency basis for a possible abscessed tooth.

5. The examination revealed that plaintiff did not have an abscessed tooth but that he was experiencing pain as a result of over brushing and root sensitivity.

6. Plaintiff was prescribed Motrin for pain.

Defendant Morris

7. On December 11, 2003, defendant Morris, a prison dentist, performed a routine dental examination.

8. During this examination, Dr. Morris scaled the four quadrants of plaintiff's mouth and advised plaintiff as to proper methods of self care.

9. Dr. Morris performed another examination on April 22, 2004.

10. During this examination, Dr. Morris obtained imprints of plaintiff's tooth 28 and noted that it had severe bone loss and appeared to be hopelessly damaged due to periodontal disease.

11. Tooth 28 was extracted that day.

/ / /

Defendant Sturges

12.     Defendant Sturges, a prison dentist, performed another dental examination on June 23, 2004.

13.     During this examination, Dr. Sturges answered plaintiff's questions and discussed with plaintiff the etiology, nature, and progression of periodontal disease.

14.     Dr. Sturges examined plaintiff again on September 21, 2004, where the four quadrants of plaintiff's mouth were scaled.

15.     During this examination, Dr. Sturges noted that plaintiff had moderate to severe bone loss and decay in tooth 16 and advised plaintiff that a follow-up appointment should be scheduled in three to four months.

16.     Dr. Sturges examined plaintiff again on August 9, 2005, at which time plaintiff's mouth was again scaled.

17.     Dr. Sturges noted that plaintiff had been conducting better self care but he did stress again to plaintiff the need for proper cleaning of his upper molars.

18.     Dr. Sturges examined plaintiff again on May 16, 2006, at which time he noted that plaintiff's tooth 16 had experienced decay.

19.     Dr. Sturges performed another examination on June 30, 2006, at which time he explained to plaintiff that he should have cleanings every four to six months given plaintiff's history of periodontal disease.

20.     Dr. Sturges also told plaintiff at the June 30, 2006, examination that he needed a lower partial denture to stabilize his teeth.

21.     Dr. Sturges examined plaintiff's teeth again on November 28, 2006, at which time plaintiff requested a lower partial denture to replace teeth 23-27.

22.     Dr. Sturges made an impression and sent it to a lab to have a denture constructed.

23.     Plaintiff's denture was delivered and adjusted for fit on March 21, 2007.

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4

1  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2  of the suit under the governing law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986);

3  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987), and

4  that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

5  for the nonmoving party, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1436 (9th Cir. 1987).

6        In the endeavor to establish the existence of a factual dispute, the opposing party

7  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

8  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

9  versions of the truth at trial."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  Thus, the "purpose of summary

10  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

11  genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

12  committee's note on 1963 amendments).

13        In resolving the summary judgment motion, the court examines the pleadings,

14  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

15  any.  <u>See</u> Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  <u>See</u>

16  <u>Anderson</u>, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed

17  before the court must be drawn in favor of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.

18  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

19  produce a factual predicate from which the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen</u>

20  <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir.

21  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

22  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

23  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

24  'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

25  / / /

26  / / /

### III.  DISCUSSION

In their motion for summary judgment, defendants argue: (1) the evidence establishes that defendants were not deliberately indifferent in that proper dental care was provided at all times; and (2) plaintiff's claims amount to a non-cognizable difference of opinion.[3]  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d

---

[3]     Defendants also argue that they are entitled to qualified immunity.

6

1   1050, 1059 (9th Cir. 1992); <u>see also</u> <u>Doty v. County of Lassen</u>, 37 F.3d 540, 546 (9th Cir. 1994).

2   Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

3   is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

4   activities; and (3) whether the condition is chronic and accompanied by substantial pain.  <u>See</u>

5   <u>Lopez v. Smith</u>, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

6           The requirement of deliberate indifference is less stringent in medical needs cases

7   than in other Eighth Amendment contexts because the responsibility to provide inmates with

8   medical care does not generally conflict with competing penological concerns.  <u>See</u> <u>McGuckin</u>,

9   974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

10  decisions concerning medical needs.  <u>See</u> <u>Hunt v. Dental Dep't</u>, 865 F.2d 198, 200 (9th Cir.

11  1989).  The complete denial of medical attention may constitute deliberate indifference.  <u>See</u>

12  <u>Toussaint v. McCarthy</u>, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical

13  treatment, or interference with medical treatment, may also constitute deliberate indifference.

14  <u>See Lopez</u>, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also

15  demonstrate that the delay led to further injury.  <u>See</u> <u>McGuckin</u>, 974 F.2d at 1060.

16          Negligence in diagnosing or treating a medical condition does not, however, give

17  rise to a claim under the Eighth Amendment.  <u>See</u> <u>Estelle</u>, 429 U.S. at 106.  Moreover, a

18  difference of opinion between the prisoner and medical providers concerning the appropriate

19  course of treatment does not give rise to an Eighth Amendment claim.  <u>See</u> <u>Jackson v. McIntosh</u>,

20  90 F.3d 330, 332 (9th Cir. 1996).

21          Regarding the deliberate indifference requirement, defendants argue:

22          Defendant Duckett only saw Plaintiff once for a dental
        appointment.  (UF 1).  In this appointment, Duckett addressed all of
23      Plaintiff's dental concerns and informed Plaintiff how to properly care for
        his teeth. (UF 2, 3).  Similarly, Defendant Stogsdill only saw Plaintiff once
24      for an emergency dental appointment. (UF 4).  In this appointment, Dr.
        Stogsdill addressed Plaintiff's concerns and assisted Plaintiff in taking
25      proper care of his teeth.  (UF 5, 6).  Defendant Dr. Morris saw Plaintiff on
        two separate occasions for dental treatment.  (UF 7, 10).  In these
26      appointments, Dr. Morris attended to Plaintiff's dental complaints and

1    treated Plaintiff's gingivitis.  (UF 7-13).  Defendant Sturges saw Plaintiff
     on six separate occasions where he also provided Plaintiff extensive dental
2    treatment. (UF 14, 17, 20, 24, 27).  In these appointments, Dr. Sturges
     gave Plaintiff routine cleanings, gingivitis treatment, advice on treatment
3    for decaying teeth, and a fitting for a lower denture.  (UF 14-34).  At no
     point did any of these Defendants refuse to treat Plaintiff for his dental
4    concerns or provide Plaintiff with substandard dental treatment.  Rather,
     the evidence shows that Defendants saw Plaintiff for dental appointments
5    nine times in a six-year span.  In these appointments, Defendants were
     attentive to Plaintiff's complaints and provided Plaintiff with extensive
6    treatment and advice on proper home care.  Therefore, Plaintiff cannot
     demonstrate that Defendants were deliberately indifferent to his dental
7    condition.

8    The court finds that this argument is supported by defendants' evidence.

9            Having identified the evidence showing the absence of a genuine dispute of

10   material fact, the burden shifts to plaintiff.  In his opposition, plaintiff largely re-asserts the

11   allegations made in the amended complaint.  Attached to his opposition are copies of various

12   government regulations and prison rules regarding medical treatment in general.  He also attaches

13   defendants' responses to his discovery requests.  The portions of his medical file attached to

14   plaintiff's opposition support defendants' timeline of events.  A review of plaintiff's declaration

15   in opposition to summary judgment reflects that it is nothing more than a rehash of his various

16   allegations devoid of evidentiary support.

17           In this case, defendants' undisputed evidence shows that they each provided

18   plaintiff with dental treatment in response to complaints of problems with his teeth.  During the

19   course of defendants' treatment, a decayed tooth was removed, plaintiff was provided education

20   on self care for periodontal disease, and plaintiff was provided routine cleaning and scaling.

21   Ultimately, plaintiff was provided with a lower partial denture to stabilize his teeth.  To the

22   extent plaintiff feels that more should have been done, or that defendants did not act reasonably

23   in provided dental care, plaintiff cannot state a claim under § 1983.  Liability under § 1983 in a

24   case such as this can only lie where the evidence shows that, at a minimum, plaintiff was

25   completely denied any treatment or care.   This was not the situation in this case, as defendants'

26   evidence demonstrates.

# IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendant Nessenson, who is deceased, be dismissed;

2.      Defendants' motion for summary judgment (Doc. 133) be granted;

3.      All other pending motions listed in footnote 2 be denied as moot; and

4.      The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


 DATED:  September 2, 2011

                                                    _____
                                                    **CRAIG M. KELLISON**
                                                    UNITED STATES MAGISTRATE JUDGE